IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

GRACIE BODO,

        Plaintiff,

    v.

BRAD ANGASAN, RENALDA ANGASAN, and THE F/V NOVARUPTA, Official Number 1302767, her engines, machinery, appurtenances and cargo, *in rem*,

        Defendants.

Case No. 3:23-cv-00035-SLG

## DECISION AND ORDER

This matter came before the Court for a one-day bench trial on February 13, 2024. The Court heard the testimony of four witnesses, and the parties submitted exhibits. After the conclusion of trial, the parties filed supplemental materials. Plaintiff filed her post-trial brief on February 17, 2024,[1] and Defendants filed supplemental materials on March 26, 2024.[2] Plaintiff also filed a motion to strike Defendants' supplemental filing at Docket 57 to which Defendants responded in opposition at Docket 58.[3] Based on the foregoing, and the record as a whole in this case, the Court now enters the following Findings of Fact and Conclusions of

---

[1] Dkt. 55.

[2] Dkt. 56.

[3] The motion to strike Defendant's supplemental material at Docket 57 is DENIED.

Law.[4]

# FINDINGS OF FACT

1. Plaintiff Gracie Bodo was hired by Defendants Brad and Renalda Angasan to work on Defendants' boat, the F/V Novarupta. Ms. Bodo worked on the vessel from approximately July 2, 2022 until July 17, 2022. She came onto the boat after the fishing season had started.

2. Although Plaintiff repeatedly requested a written contract, she was never provided one. While Defendants stated they had difficulty providing a written contract to Plaintiff when they were on the boat due to limited internet access, no evidence that a handwritten contract was attempted to be signed was introduced.

3. Before Plaintiff went onto the boat, the parties discussed by text the terms for Plaintiff's work. Defendant Renalda Angasan asked in a text if Plaintiff had "a percentage in mind?" for a crew share to work on the boat. Plaintiff responded that she had "made 10% my last 2 years" fishing in Bristol Bay. Ms. Angasan did not make a counteroffer or propose a different percentage; instead, she responded "I'd have to email you a contract when I have a stronger signal." Pl. Ex. 2 at 4.

4. Ms. Angasan computed a 5% crew share for Ms. Bodo at $8,886.75. Def.

---

[4] *See* Fed. R. Civ. P. 52(a)(1) ("In an action tried on the facts without a jury . . . , the court must find the facts specially and state its conclusions of law separately."). Findings of fact in a civil case are by a preponderance of the evidence.

Case No. 3:23-cv-00035-SLG, *Bodo v. Angasan, et al.*
Decision and Order
Page 2 of 6
Case 3:23-cv-00035-SLG   Document 59   Filed 05/14/24   Page 2 of 6

Ex. 3. This was based on a total payment from Trident of $245,665.99 for the 2022 season. However, the actual gross income for that season for the vessel was $250,172.85. *See* Def. Exs. 2, 3. 10% of the difference between those two numbers is $450.69. The Court finds that $8,886.75 x 2, which equals $17,773.50, plus $450.69, which totals $18,224.19, constitutes the best evidence of a 10% crew share for the vessel for the 2022 season.

5. The registered vessel tonnage of the F/V Novarupta by the United States Coast Guard is 25 gross tons. Dkt. 55.

6. The actual gross tonnage of the vessel, according to marine surveyor Daniel O'Hara, is 17 tons. Dkt. 56-1 at 1.

7. As of the date of trial, Defendants have not paid any amount to Ms. Bodo for her work on the vessel. However, Plaintiff did not provide her tax information to Defendants until December 2022, after this lawsuit had been filed. Def. Ex. 4.

8. The parties never agreed, either orally or in writing, on the percentage crew share that Ms. Bodo would receive.

9. Ms. Bodo received a 10% crew share on another fishing vessel during the 2021 Bristol Bay sockeye season. She received an 8% crew share in 2020 when she worked on a vessel seining out of Prince William Sound.

10. 10% is the standard crew share for Bristol Bay commercial sockeye fishing

Case No. 3:23-cv-00035-SLG, *Bodo v. Angasan, et al.*
Decision and Order
Page 3 of 6
Case 3:23-cv-00035-SLG   Document 59   Filed 05/14/24   Page 3 of 6

for a person of average skill and experience. It is the crew share that was paid in 2022 to seamen performing at a similar rating with similar duties to Ms. Bodo.

11. There is considerable variation in the Bristol Bay fishery on the deductions made by the vessel owners from gross income to arrive at the net income from which the crew share is paid.

12. Plaintiff has not demonstrated that the deductions made by Defendants from gross income to arrive at the net income from which the crew share is to be paid are unreasonable.

13. The total gross income for the vessel in 2022 was $250,172.85. Of this amount, $58,182.62, or 23%, was earned for deliveries prior to July 2, 2022, the date that Ms. Bodo began fishing. Def. Ex. 2.

## ORDER

1. 46 U.S.C. § 10601 requires that a crew share agreement be in writing when the vessel is "at least 20 gross tons as measured under section 14502 of this title."

2. 46 U.S.C. § 14502 provides, "The Secretary shall measure a vessel to which this chapter applies in the way provided by this chapter."

3. 46 U.S.C. § 10601 requires a written contract based on the Coast Guard's tonnage measurement, even if the actual tonnage is less than 20 gross tons. If no written contract is entered into, the engagement of the seaman

is contrary to this law.

4. 46 U.S.C. §11107 provides that if an engagement of a seaman is contrary to a law of the United States, the seaman is "entitled to recover the highest rate of wages at the port from which the seaman was engaged," in the absence of an agreed amount to be given the seaman at the time of engagement.

5. Under Ninth Circuit precedent, the "highest rate of wages" as set forth in 46 U.S.C. §11107 is "to be measured against seamen with the same rating or similar duties." *TCW Special Credits v. Chloe Z Fishing Co., Inc.*, 129 F.3d 1330, 1334 (9th Cir. 1997).

6. Given the registered Coast Guard tonnage for the vessel, and the lack of a written contract or wage agreement, Plaintiff is entitled to recover the highest rate of wages measured against seamen with the same rating or similar duties as her, which this Court finds to be a 10% crew share.

7. The Alaska Wage and Hour Act is not applicable to this maritime claim for unpaid wages.

**ORDER**

Based on the foregoing, the Court finds that Plaintiff is entitled to recover from Defendants a crew share in the amount of $14,032.63. This consists of the 10% crew share for the season—$18,224.19—less 23% for the beginning of the season income when Ms. Bodo did not fish, which equals $14,032.63.

Case No. 3:23-cv-00035-SLG, *Bodo v. Angasan, et al.*
Decision and Order
Page 5 of 6
Case 3:23-cv-00035-SLG   Document 59   Filed 05/14/24   Page 5 of 6

IT IS SO ORDERED. The Clerk of Court shall enter Judgment for Plaintiff and against Defendants in the amount of **$14,032.63**.

DATED this 14th day of May 2024, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE
